[Civ. No. 3156. Second Appellate District, Division Two.—February 2, 1920.]

## WARREN NATIONAL BANK, WARREN, PA. (a Corporation), Appellant. v. LENA M. SUERKEN, Respondent.

[1] ESTATES OF DECEASED PERSONS—CLAIM AGAINST—AGREEMENT OF HEIR TO PAY—EXTENSION OF TIME—CONSIDERATION.—Where an heir at law, in order to protect the estate of the decedent from a claim against the decedent which is enforceable against the property of the estate to which she is about to succeed, obtains a renewal or extension of time on such claim by agreeing to pay it, such renewal or extension is sufficient consideration for the promise.

[2] ID.—EXECUTION OF COLLATERAL NOTE—PRESUMPTION OF CONSIDERATION—BURDEN OF PROOF.—Where such heir at law executes.

her collateral notes as security for the indebtedness, those notes on their face import a consideration and, in an action thereon, the burden is on her to establish the fact of want of consideration.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Reversed.

The facts are stated in the opinion of the court.

Bennett, Turnbull, & Thompson and Rupert B. Turnbull for Appellant.

Allen & Allen for Respondent.

SLOANE, J.—The defendant and her stepmother, Annetta R. Johnson, and her brothers, Everett F. Johnson and Charles B. Johnson, were the heirs at law of James P. Johnson, deceased. At the time of his death, James P. Johnson was indebted to the plaintiff bank in a sum approximating fifteen thousand dollars, for which the bank held his unsecured promissory notes. The decedent had been in the furniture business in his lifetime, and the heirs, desiring to continue the business, organized a corporation known as the Johnson Furniture Company, the sole incorporators of which were the said heirs. This corporation then took over, and thereafter operated, the furniture business. After the organization of such company the four heirs, including this defendant, executed to the Johnson Furniture Company their joint notes for a sum covering the amount of the notes of the decedent held by the bank, and the Johnson Furniture Company indorsed these notes over to the bank. This transaction was had at the request of the plaintiff bank.

The whole controversy in this case is as to whether the defendant, Lena M. Suerken, joined in the execution of these notes without consideration, as an accommodation maker, or was assuming and guaranteeing her father's indebtedness in her own behalf and for the protection of her own interest in his estate.

The notes were executed in the state of Pennsylvania. The defendant was, at the time, a married woman. It is stipulated that under the laws of that state, as a married woman, she was disqualified from becoming an accommodation

indorser, maker, guarantor, or surety on any note or contract. The trial court found that defendant joined in the execution of said notes, "not for any debt of the defendant, but as collateral security to secure the payment of certain notes made by James P. Johnson, deceased, father of the defendant, which notes [the notes of James P. Johnson, deceased] are held by the plaintiff." It is upon the sufficiency of the evidence to support this finding that the appeal is taken.

No point is made as to the sufficiency of the finding to support the judgment. It will be noticed that the court does not expressly find that the defendant was an accommodation maker, or that she executed the notes without consideration, but that the notes were executed, "not for any debt of the defendant, but as collateral security to secure the debt of her father." It might readily be, under the relations and interests of the parties here, that the defendant, in her own interest and to protect her own rights as an heir, executed collateral security for the debts of her father, which debts existed as a claim against his estate, including the business which was taken over by the corporation, the Johnson Furniture Company, to whom the notes here sued on were primarily made payable. Under such circumstances she could hardly be classed as an accommodation maker. However, the point is not raised, and it, perhaps, may be reasonably inferred from the findings as a whole that the court intended to reach and express the conclusion that the defendant signed these notes without consideration. If the evidence is such as to support such an interpretation, we are disposed to so construe it. If the fact that the notes were given as collateral security for the father's indebtedness was conclusive on the point that they were without consideration, we think the evidence is ample to uphold such a finding. A number of witnesses testified that such was the avowed and agreed purpose, and the circumstance that the bank continued to hold the original notes of the deceased father is corroborative of this conclusion, notwithstanding the attempted explanation by plaintiff that they were retained merely to show the nature of the transaction.

[1] But was there no consideration for the collateral contract? It is true the evidence sufficiently shows that

defendant was under no legal obligation to secure her father's liabilities to the bank. What her interest in the Johnson Furniture Company—the original payee named in the notes, and of which corporation she was a member—was, or whether she owed anything to it, does not appear, so far as we have been able to discover from the record. It was further testified that the defendant did not receive "any money personally, or anything of value, or any consideration of any kind, from the Warren National Bank." The facts, however, that do appear beyond dispute are: that the defendant was an heir at law of her deceased father's estate and a member of the corporation formed by the heirs to carry on his furniture business; that the plaintiff bank held the obligations of the decedent for some fifteen thousand dollars, which were claims against his estate; that the estate appears to have been solvent; that the bank insisted upon some sort of a settlement, and demanded the execution of the collateral notes as security for the father's indebtedness, "so that the records of the bank show up properly to the directors and bank examiners, and also that the notes of the decedent could be kept alive," and "they said that they would carry on the indebtedness if the notes were kept alive." It further appears that the bank refrained from pressing any claim against the estate. Whether the estate was probated and any claim presented or filed on the original notes does not appear. But at least there was an agreement, which was fulfilled by the bank, to extend and carry the estate's indebtedness in consideration for the collateral notes. Under this state of facts, does the testimony of the witnesses for defendant that defendant "received nothing of value or any consideration of any kind from the Warren National Bank"—statements which in the light of the more specific testimony as to the facts, may be classed as conclusions or opinions, rather than probative facts—justify the finding of want of consideration, particularly in view of the doubtful expression of the court in its finding on that point? [2] These collateral notes on their face import a consideration. The burden is clearly on the defendant to establish the fact of want of consideration. As an heir at law, entitled to succeed to an interest in decedent's property, and one of the organizers of the family corporation that was taking over the furniture busi-

ness of the deceased, it would seem that she was beneficially interested in securing a settlement or a postponement of these claims, which were enforceable, both against her general interests as an heir and against the property being taken over by the corporation of which she was a member.

An accommodation maker is defined in Parsons on Notes and Bills, section 131, as "one who puts his name there without any consideration, with the intention of lending his credit to the accommodated party." As stated in Randolph on Commercial Paper, second edition, section 472, the term "without consideration" must be considered as meaning simply "without consideration to the accommodating party directly." Accepting this definition, can it be doubted that when the defendant here became a party to these notes it was for the direct advantage to be gained by herself and her coheirs and associates in protecting their interest in decedent's estate from the immediate enforcement of this liability against it? It was not a liability enforceable against the defendant, but it was enforceable against the property to which she was about to succeed. Any suspension or forbearance of a legal right constitutes a sufficient consideration for a note or bill. (Civ. Code, sec. 1605; *Naglee v. Lyman,* 14 Cal. 450.) And where heirs or assignees of an estate of a deceased person, in order to protect that estate from claims against the decedent which are enforceable against the property of the estate, obtain a renewal or extension of time on the original claim by agreeing to pay it, such renewal or extension is sufficient consideration for their promise. (*Rohrbacher* v. *Aitken,* 145 Cal. 484, [78 Pac. 1054]; *Whelan* v. *Swain,* 132 Cal. 389, [64 Pac. 560]; *Humboldt Sav. etc. Soc.* v. *Dowd,* 137 Cal. 408, [70 Pac. 274].) In the last cited case, where the renewal note and mortgage were given by the heirs to secure extension of time on decedent's debt, the court says: "The court found that the note and mortgage described in the complaint were executed for a valuable consideration, and we think the evidence fully supported the finding. The old note and mortgage constituted a valid lien upon the lands to which the O'Connell children were heirs. It was created by their father in his lifetime. . . . The original indebtedness was never paid. By the act of the children in making the new note and mortgage they intended to renew the old ones and

to get further time. This was the evident intent, and made plainer by the continued payments of interest. The mortgagors, after executing the note and mortgage, in extension of a debt which was a legal charge upon their property, will not now be heard to say that their act was without consideration." We think the same reasoning applies to the respondent. on this appeal. Although the plaintiff bank has no mortgage lien on the decedent's estate, the estate was solvent, and liable for the debt, and the collateral notes sued on were given to protect the interest of the respondent and other heirs from the charge of this debt.

Judgment reversed.

Finlayson, P. J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 1, 1920.

All the Justices concurred.